# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

SOUTHERN-OWNERS INSURANCE
COMPANY,

      Plaintiff,

v.                                   Case No: 8:20-cv-1706-WFJ-TGW

FLORIDA CONSTRUCTION SERVICES,
INC.; FIRST FLORIDA BUILDING
CORPORATION; FIRST FLORIDA, LLC;
APARTMENTS AT GRADY SQUARE,
LLC; THE RICHMAN GROUP OF
FLORIDA, INC.; GILBERTO SANCHEZ;
and FIRST MERCURY INSURANCE
COMPANY,

      Defendants.
_____/

FIRST MERCURY INSURANCE COMPANY,

      Defendant/Counter-Plaintiff,

v.

SOUTHERN-OWNERS INSURANCE
COMPANY,

      Plaintiff/Counter-Defendant.
_____/

## ORDERS ON SUMMARY JUDGMENT MOTIONS

    This matter is an insurance coverage dispute arising from a tort suit ("the

1

underlying lawsuit") currently pending in state court.  Before the Court are two

summary judgment motions: a motion for summary judgment by Plaintiff/Counter-

Defendant Southern-Owners Insurance Company ("Southern-Owners") (Dkts. 74

& 75) and a motion for partial summary judgment by intervening

Defendant/Counterclaimant First Mercury Insurance Company ("First Mercury")

(Dkts. 55 & 56).  Both motions were heard at argument on August 30, 2021.  The

Court has reviewed Southern-Owners' motion, the responses (Dkts. 81, 82, 85, 96,

& 97), and Southern-Owners' replies (Dkts. 89, 90, & 91). The Court has also

reviewed First Mercury's motion and the responses (Dkts. 69, 72, 77, & 83).  For

reasons set forth below, this Court denies Southern-Owners' motion without

prejudice and grants First Mercury's motion.

## BACKGROUND

This lawsuit arises out of a 2016 accident in which a construction worker,

Gilberto Sanchez, was seriously injured during construction of the Grady Square

apartments in Tampa.  Dkt. 1-2.  Mr. Sanchez fell over 43 feet, or over three

stories, through a hole in the apartment building's roof.  Dkt. 1-2 at 12.  Mr.

Sanchez filed a lawsuit against the various Defendants, who were involved in the

development and construction of this apartment complex.  Dkt. 1-2 at 1.  Mr.

Sanchez's underlying lawsuit, Case No. 2019-CA-9816-C, is pending before the

13th Judicial Circuit in Hillsborough County, Florida.  The underlying complaint is

vast, consisting of 148 pages, 932 paragraphs, and 92 separate counts, and it names a large number of other defendants.  Dkts. 1-2, 1-3, & 1-4.  The complaint is notable for the great linguistic effort it undertakes to avoid a workers' compensation immunity bar, seeking instead to obtain recovery for Mr. Sanchez beyond the remedies provided by Florida workers' compensation law.

There are numerous parties to the instant motions.  Apartments at Grady Square, LLC, ("Grady Square") is the owner of the apartment project where Mr. Sanchez's injury occurred, with the Richman Group of Florida ("Richman") being a disputed owner of the same.  Dkt. 1-2 at 2−3.  Richman is not listed as an owner on the first page of the main AIA construction contract, yet it is listed as an owner in the General Conditions that follow and are expressly adopted by the main contract.  Dkt. 75-5 at 2, 41.  First Florida, LLC, was the prime contractor on the apartment job, as listed in the main AIA contract.  Dkt. 75-5 at 1.  Though the relation is not entirely clear from the record, First Florida, LLC, is related to First Florida Building Corp. ("First Florida Building").  Florida Mercury issued a commercial general liability policy to prime contractor First Florida, LLC, and First Florida Building.  Dkt. 55-5 at 24.  Additional insureds under the First Mercury insurance policy are owner Grady Square and disputed owner Richman. Dkt. 55-5 at 32.  First Mercury is presently providing a defense to these four entities in Mr. Sanchez's underlying tort suit.  Dkt. 56 at 12.

Florida Construction Services, Inc., ("Florida Construction") worked as First Florida, LLC,'s carpentry and roofing subcontractor on the apartment project. Dkt. 1-5. The parties' subcontract incorporates by reference the General Conditions of First Florida, LLC,'s main AIA contract. Dkt. 1-5 at 2 ¶¶ 1, 1.3. Florida Construction's scope of work under the subcontract includes "complet[ing] all framing carpentry work," including "frame walls, set trusses, sheath roofs and dormers," a "roof truss system," and the "framing of flat deck roofing." Dkt. 1-5 at 1 ¶ 1.7. Under the subcontract, Florida Construction is "responsible for safety and fall protection," as well as "[s]afety framing as necessary to provide fall protection through scope of work" to include "installation of fall protection and removal of fall protection." Dkt. 1-5 at 1 ¶ 1.7.

Pursuant to the subcontract, Florida Construction provides the following broad indemnity:

> **Indemnity. 5.1** [Florida Construction] agrees to indemnity, defend and hold harmless First Florida, the Owner and their respective officers, representatives, employees, agents, parents, affiliates and subsidiaries from any claim, liability, damage, loss, judgment or cost . . . arising out of, in connection with, or in any manner pertaining to this Subcontract or the Work hereunder caused, in whole or in part, by any act, omission or default of Subcontractor, or any of Subcontractor's subcontractors . . . whether or not caused in part by any act, omission or default of First Florida or any other party indemnified hereunder.

Dkt. 1-5 at 2 ¶ 5.1. The subcontract also obliges Florida Construction to carry insurance. Dkt. 1-5 at 3 ¶ 6.3. Florida Construction was required to name

4

"FFLLC,[1] Owner and Architect/Engineer and their officers, agents and employees" as "additional insured[s]" on its commercial general liability policy, with minimum limits of coverage being $1,000,000 per occurrence and $2,000,000 aggregate. Dkt. 1-5 at 3 ¶ 6.3. Florida Construction bought the Southern-Owners commercial general liability policy, which contains the coverage amounts required by the subcontract. Dkt. 1-1 at 6.

The Southern-Owners policy has an exclusion for "bodily injury," obligating the insured "to pay damages by reason of the assumption of liability in a contract or agreement." Dkt. 1-1 at 28 ¶ 2b. Yet the "insured contract" exception restores coverage for liability for damages "[a]ssumed in a contract or agreement that is an 'insured contract.'" Dkt. 1-1 at 28 ¶ 2b(1). Under the policy, an "insured contract" includes "[t]hat part of any other contract or agreement pertaining to your business . . . under which you may assume the tort liability of another party to pay for 'bodily injury' . . . to a third person or organization." Dkt. 1-1 at 41 ¶ 10f. The policy goes on to define "tort liability" as "a liability that would be imposed by law in the absence of any contract or agreement." Dkt. 1-1 at 41 ¶ 10f.

In addition to covering an "insured contract," the Southern-Owners policy has a Blanket Additional Insured ("BAI") endorsement. Dkt. 1-1 at 19. The BAI

---

[1] The term "FFLLC" in this indemnity provision of the subcontract appears to reference First Florida, LLC.

endorsement provides that "[a] person or organization is an Additional Insured, only with respect to liability arising out of 'your work' for that Additional Insured by or for you . . . [i]f required in a written contract or agreement." Dkt. 1-1 at 19 ¶ A.  The policy defines "your work" as "[w]ork or operations performed by you or on your behalf." Dkt. 1-1 at 44 ¶ 27a.  This includes "[t]he providing of or failure to provide warnings or instructions." Dkt. 1-1 at 44 ¶ 27b.  The Southern-Owners policy is "primary for the Additional Insured, but only with respect to liability arising out of 'your work' for that Additional Insured by or for you." Dkt. 1-1 at 19 ¶ C.  It further states that "[o]ther insurance available to the Additional Insured will apply as excess insurance and not contribute as primary insurance to the insurance provided by this endorsement." Dkt. 1-1 at 19 ¶ C.  Both Richman and First Florida Building seek coverage under the policy's BAI clause.

Southern-Owners disputes Richman's status as an additional insured under the policy's BAI endorsement. Dkt. 75 at 11−12.  While Southern-Owners agrees that Grady Square is an additional insured as an owner of the apartment project, it contends that Richman is a non-owner and, therefore, not covered by the BAI endorsement. Dkt. 75 at 11−12.  Southern-Owners notes that Richman is neither listed as an owner on the main AIA contract's first page or signature page, nor is it listed as an owner in the subcontract. Dkt. 75 at 5.  Moreover, Southern-Owners contends that dispositive deposition testimony from Richman's corporate

representative establishes that Richman is not an owner of the apartment project, but the developer.  Dkt. 75 at 4−5, 11−12.

Regarding First Florida Building, Southern-Owners argues that the subcontract neither references this entity nor requires Florida Construction to list it as an additional insured under the insurance policy.  Dkt. 75 at 11.  As such, Southern-Owners contends that First Florida Building is not an additional insured under the BAI clause.  Dkt. 75 at 12.  However, Southern-Owners concedes that First Florida, LLC, is an additional insured under the policy's BAI endorsement based on its subcontract with Southern-Owners' named insured, Florida Construction.  Dkt. 75 at 11−12.  Southern-Owners also acknowledges that First Florida, LLC, and Grady Square may be additional insureds under the policy's aforementioned "insured contract" provision, independent of the BAI endorsement, based on the subcontract that requires Florida Construction to indemnify, defend, and hold harmless "First Florida" and the "Owner."  Dkt. 75 at 22 (citing Dkt. 1-5 at 2 ¶ 5.1).

Nevertheless, Southern-Owners contends that even if there are additional insureds under the policy, coverage does not apply.  Dkt. 75 at 12, 22−24. Southern-Owners is providing a defense to its named insured, Florida Construction, but it disputes coverage for the same.  Dkt. 75 at 5.  Southern-Owners is not providing a defense, and declined First Mercury's written tender of

7

defense, for the other four entity Defendants.  Dkts. 55-6 & 75-6.

In its motion for summary judgment, Plaintiff/Counter-Defendant Southern-Owners asks the Court to declare as a matter of law that it has no duty to defend the above-styled entity Defendants in the underlying lawsuit.  Conversely, intervening Defendant/Counterclaimant First Mercury's motion for partial summary judgment seeks a declaration confirming that Grady Square and Richman are additional insureds under the Southern-Owners policy and establishing that Southern-Owners has the primary duty to defend them in the underlying lawsuit.  If the primary duty of defense lies with Southern-Owners, First Mercury also seeks reimbursement from Southern-Owners for the costs to date that First Mercury has incurred in providing a defense to Grady Square and Richman.

## LEGAL STANDARD

A district court should grant summary judgment only when it determines that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue of fact is "material" if it is a legal element of the claim which might affect the outcome of the case.  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).  An issue of fact is "genuine" if the record, in its entirety, could lead a rational trier of fact to find for the nonmovant.  *Id.*  The moving party bears the burden of demonstrating that no

genuine issue of material fact exists. *Id.*

In deciding a motion for summary judgment, a court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004). Upon doing so, the court must determine whether a rational jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the inferences arising from undisputed facts, a court should deny summary judgment. *Allen*, 121 F.3d at 646.

The standard for assessing competing motions for summary judgment is no different than the standard for assessing a single motion for summary judgment. *Am. Bankers. Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). Each competing motion must be considered on its own merits. *Id.* In other words, competing or cross-motions for summary judgment do not permit a court to grant summary judgment unless one of the moving parties is entitled to judgment as a matter of law on facts not genuinely in dispute. *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984).

## ANALYSIS

Under Florida law, the interpretation of an insurance contract is a matter of law left to the court. *Gas Kwick, Inc. v. United Pac. Ins. Co.*, 58 F.3d 1536,

1538–39 (11th Cir. 1995).  Florida law requires an insurance policy to be construed according to its plain meaning.  *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005).  "[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision."  *Id.* (quoting *Hagen v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla. 5th DCA 1996)); *see also Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 412 F.3d 1224, 1227–28 (11th Cir. 2005).  Accordingly, an unambiguous insurance contract will be construed according to its plain terms without reliance on extrinsic evidence.  *See Taurus Holdings*, 913 So. 2d at 532.  Florida law also imposes two duties upon insurers: a duty to defend and a duty to indemnify.  *Scottsdale Ins. Co. v. GFM Operations, Inc.*, 789 F. Supp. 2d 1278, 1284 (S.D. Fla. 2011).  The duty to defend is broader than the duty to indemnify.  *Id.*  The present case deals only with the duty to defend.

Whether an insurer has a duty to defend is determined by the "eight corners rule," which requires a court to consider the allegations set forth within the four corners of the complaint and the terms found within the four corners of the insurance policy.  *Founders Ins. Co. v. Cortes-Garcia*, No. 8:10-cv-2286-EAK-AEP, 2012 WL 2505917, at *4 (M.D. Fla. June 28, 2012); *see also Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 442–43 (Fla. 2005).  Extrinsic evidence

generally should not be considered in making this determination.  *See Jones*, 908 So. 2d at 443 (citing *Irvine v. Prudential Prop. & Cas. Ins. Co.*, 630 So. 2d 579, 579−80 (Fla. 3d DCA 1993)).  Determining the existence of the duty to defend requires consideration of the facts alleged in the complaint, as well as the legal theories and specific causes of actions set forth.  *Jones Boat Yard, Inc. v. St. Paul Fire & Marine Ins. Co.*, 745 F. App'x 308, 312 (11th Cir. 2018).  There is no duty to defend when the complaint alleges facts that fail to bring the case within the policy's coverage.  *Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So. 2d 533, 535 (Fla. 1977).  Under Florida law, "[i]f the complaint alleges facts partially within and partially outside the scope of coverage, the insurer is obligated to defend the entire suit."  *Trizec Props., Inc. v. Biltmore Constr. Co., Inc.*, 767 F.2d 810, 811−12 (11th Cir. 1985); *see also Trailer Bridge, Inc. v. Ill. Nat. Ins. Co.*, 657 F.3d 1135, 1141 (11th Cir. 2011).  Any doubt as to whether a duty to defend exists must be resolved against the insurer and in favor of the insured.  *Trizec Props.*, 767 F.2d at 812.

Moreover, in determining whether an insurer must defend an additional insured under a policy, Florida courts routinely consider contracts that mandate such insurance requirements.  *See, e.g., Amerisure Ins. Co. v. Seneca Specialty Ins. Co.*, No. 20-20442-CIV, 2020 WL 3317035, at *4 (S.D. Fla. June 18, 2020); *Travelers Prop. Cas. Co. of Am. v. Amerisure Ins. Co.*, 161 F. Supp. 3d

1133, 1136−37 (N.D. Fla. 2015), *aff'd*, 674 F. App'x 957 (11th Cir. 2017).  The party seeking coverage bears the burden of proving an underlying claim is covered by the policy.  *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997).  The insurance carrier, however, bears the burden of proving that an exclusion or exception to coverage applies.  *Id*.  Exclusionary clauses are construed more strictly than coverage clauses, given they tend to avoid or limit liability.  *Category 5 Mgmt. Grp., LLC v. Companion Prop. & Cas. Ins. Co.*, 76 So. 3d 20, 23 (Fla. 1st DCA 2011).  A court must assess whether "the allegations of the complaint are cast solely and entirely within the policy exclusion and are attributed to no other reasonable interpretation."  *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1359 (M.D. Fla. 2001).

Here, the duty to defend turns on the "eight corners" of the underlying complaint (Dkt. 1-2) and the two insurance policies (Dkts. 1-1 & 55-5).  While extrinsic evidence generally should not be considered in this determination, Southern-Owners suggests that extrinsic evidence may sometimes be considered in addition to the "eight corners" of the complaint and insurance policies.  Dkt. 75 at 9 (citing *Acosta v. Nat'l Union Fire Ins. Co.*, 39 So. 3d 565 (Fla. 1st DCA 2010)).  But this is only true in a case where uncontroverted facts show the matter to be clearly outside of coverage, with the claimant making no attempt to plead or establish coverage.  *See, e.g.*, *Composite Structures, Inc. v. Cont'l Ins. Co.*, 560 F.

App'x 861, 866 (11th Cir. 2014); *Sinni v. Scottsdale Ins. Co.*, 676 F. Supp. 2d 1319 (M.D. Fla. 2009); *Nationwide Mut. Fire Ins. Co. v. Keen*, 658 So. 2d 1101, 1103 (Fla. 4th DCA 1995).  That is not the case, here.

### SOUTHERN-OWNERS' MOTION FOR SUMMARY JUDGMENT

The Court turns first to Southern-Owners' motion for summary judgment. Southern-Owners contends that neither Richman nor First Florida Building are additional insureds under the Southern-Owners policy.  Dkt. 75 at 11. Concerning Richman, Southern-Owners asserts that Richman is a non-owner of the apartment project where Mr. Sanchez was injured and, therefore, is not an additional insured under the policy's BAI endorsement.  Dkt. 75 at 11−12. Southern-Owners notes that Richman is not listed as an owner on the first page or signature page of the main AIA contract, nor is it listed as an owner in the subcontract.  Dkt. 75 at 5, 11−12.  Southern-Owners also states that testimony from Richman's corporate representative establishes that Richman is a developer rather than an owner.  Dkt. 75 at 4−5.

The Court rules that this argument fails.  The General Conditions of the main AIA contract list Richman as an owner.  Dkt. 75-5 at 41.  These General Conditions are part of the main construction contract,[2] as Southern-Owners

---

[2] The General Conditions are physically part of the main AIA contract.  *See* Dkt. 75-5.  The main AIA contract itself expressly adopts the General Conditions.  Dkt. 75-5 at 1.  The General Conditions are, therefore, interpreted as part of this main construction contract.  *See generally*

13

concedes.  Dkt. 77 at 3.  They were also incorporated by reference into the subcontract.  Dkt. 1-5 at 2 ¶¶ 1, 1.3.  Southern-Owners' BAI endorsement says that the written contracts control who constitutes an additional insured.  Dkt. 1-1 at 19.  Thus, Richman has shown that Southern-Owners' motion for summary judgment on this point must be denied.

As to First Florida Building, Southern-Owners says that this entity is not listed in the main AIA contract or the subcontract.  Dkt. 75 at 11.  For this reason, Southern-Owners contends that First Florida Building cannot be an additional insured under the Southern-Owners policy's BAI endorsement.  Dkt. 75 at 12.  In response, First Florida Building states that the underlying complaint repeatedly makes claims against it.  Dkt. 85 at 1−2, 15.  This is true.  Dkt. 1-2 *passim*. Moreover, First Florida Building argues that the subcontract is ambiguous.  Dkt. 85 at 10, 12.  The subcontract uses the term "FFLLC" (which would appear to be a reference to First Florida, LLC) and uses the undefined terms "First Florida" and "First Florida Industries and its subsidiaries."  Dkt. 1-5 ¶¶ 2.7, 5.1; Dkt. 1-5 at 4.  The subcontract also provides that First Construction agrees to indemnify, *inter alia*, "First Florida" and its "respective officers, representatives, employees,

---

*OBS Co. v. Pace Const. Corp*, 558 So. 2d 404, 406 (Fla. 1990) ("[W]here a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing."); *Twin Oaks at Southwood, LLC v. Summit Constructors, Inc.*, 941 So. 2d 1263, 1264 (Fla. 1st DCA 2006) (noting that the "general conditions" referenced by a construction contract constituted part of that construction contract).

agents, parents, affiliates and subsidiaries." Dkt. 1-5 at 2 ¶ 5.1. The record shows that First Florida Building is an affiliate of First Florida, LLC.[3] Whether First Florida Building is an additional insured under the Southern-Owners policy is a reasonably contested matter. Given that this is sufficiently contested and unclear, the Court must deny Southern-Owners' motion on this point.

Southern-Owners' second point is that the underlying complaint does not set forth an "occurrence" or "accident" warranting coverage. Dkt. 75 at 12. The Southern-Owners policy provides coverage for an "occurrence," which is defined by the policy as an "accident." Dkt. 1-1 at 42. Southern-Owners says no such accident or occurrence is listed in the underlying complaint because Mr. Sanchez alleged therein that each Defendant "created and maintained the concealed hole, and failed to warn of it such that [they] knew based on prior similar accidents or on explicit warnings identifying a known danger was virtually certain to result in injury or death to persons such as Sanchez." Dkt. 75 at 13 (citing Dkt. 1-2 ¶ 88). Southern-Owners argues that the allegations set forth in the underlying complaint demonstrate that the Defendants "*at least* expected the incident." Dkt. 75 at 14 (emphasis in original). In other words, Southern-Owners contends that the

---

[3] Southern-Owners stated that First Mercury's affiant was competent to address matters related to the First Mercury policy. Dkt. 77 at 2. The First Mercury policy makes clear that First Florida, LLC, and First Florida Building are affiliates—they are both listed as "the insured" under the First Mercury policy and list the same officer and address. Dkt. 55-3 at 29.

underlying complaint alleges that Mr. Sanchez's fall from the roof was intentional, or at least so purposeful that it was inevitable—*not* an accident.

Section 440.11(1)(b), Florida Statutes, recognizes an "intentional tort exception" to workers' compensation liability, and Mr. Sanchez's lawyers below certainly word-smithed the underlying complaint in an attempt to avoid this workers' compensation bar.  For example, the underlying complaint repeatedly describes Mr. Sanchez's injury as a "virtual certainty."  Dkt 1-2 at 6−12, 16.  The question is whether this language in the underlying complaint's general allegations, which were incorporated by reference into every count (as were all foregoing paragraphs throughout the underlying complaint), bars coverage here because the injury was not an accident, but either a virtual certainty or the result of Defendants' intentional conduct.

Under Florida law, "the term 'accident' within a liability policy is susceptible to varying interpretations and should be construed in favor of the insured." *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1076 (Fla. 1998).  Moreover, the Eleventh Circuit instructs that all doubts regarding whether a duty to defend exists must be resolved in favor of coverage. *Trizec Props.*, 767 F.2d at 812.  Viewed in this light and as a whole, some allegations of the underlying complaint fairly implicate coverage.  The prolix underlying complaint sounds in many theories.  For example, the underlying complaint

16

asserts many vicarious and direct liability claims against Grady Square and Richman, including counts for premises liability and negligence-based claims. Dkt. 1-2 at 17−45, 66−77.  The underlying complaint also alleges multiple acts of negligence, negligent operation, and negligent hiring, retention, and supervision against the First Florida entities.  Dkt. 1-2 at 45−52, 88−95, 115−23, 136−40.  Mr. Sanchez may prove all of these claims at trial below without needing to show intentional conduct or virtual certainty of occurrence.  The Court declines Southern-Owners' motion for summary judgment that asserts no "occurrence" or "accident" happened when Mr. Sanchez fell through the high roof.

Next, Southern-Owners asserts several policy exclusions.  Southern-Owners bears the burden of demonstrating that the allegations in the underlying complaint are cast solely and entirely within one or more policy exclusions and are not attributed to any other reasonable interpretation.  *Northland Cas. Co.*, 160 F. Supp. 2d at 1359.

First, Southern-Owners says that the policy's "expected or intended injury" exclusion applies.  Dkt. 75 at 15.  Southern-Owners contends that, because of the way the underlying complaint is written, the putative insureds expected or intended for Mr. Sanchez to fall 43 feet to his near death.  Dkt. 75 at 17.  This is not plausible, for reasons discussed above.  As a matter of the real world, no one expected or intended Mr. Sanchez to fall 43 feet through the roof, no matter how

many suggestive and artful passages can be extracted from the underlying complaint.  The underlying case brings many negligence claims against the Defendants.  Again, these negligence and premises liability claims may be proven without showing that any injury was expected or intended.  As such, the underlying complaint is certainly not cast entirely within that "expected or intended injury" exclusion.  The only case cited by Southern-Owners in support of this contention is distinguishable and has garnered little or no progeny.[4]

Second, Southern-Owners posits the application of the policy's "Exclusion d," which excludes coverage for workers protected by Florida's workers' compensation law.  Dkt. 1-1 at 28; Dkt. 75 at 18.  Southern-Owners asks this Court to take this analysis well outside of the "eight corners rule" and determine as an uncontested issue of fact that Mr. Sanchez was an employee of First Florida Building under the broad workers' compensation statutory definition and case law expansion.[5]  Dkt. 75 at 18−19.  Southern-Owners also seeks, based on Florida law, a declaration that Richman, First Florida, LLC, and Florida Construction are

---

[4] *Catlin Syndicate 2003 v. Rinkus*, 43 F. Supp. 3d 1255 (S.D. Fla. 2012).

[5] Southern-Owners points to Florida's workers' compensation law, which defines an "employee" as "any person who receives remuneration from an employer for the performance of any work or service while engaged in any employment under any appointment or contract for hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed[.]" Fla. Stat. § 440.02(15)(a).  Southern-Owners argues that, pursuant to section 440.11, the workers' compensation immunity "applies both vertically and horizontally" to cover subcontractors and subsubcontractors.  Dkt. 75 at 19 (citing *Ciceron v. Sunbelt Rentals, Inc.*, 163 So. 3d 609, 612 (Fla. 2d DCA 2015)).

all covered by Florida workers' compensation immunity and, therefore, excluded from coverage by Exclusion d.  Dkt. 75 at 18−19.  Southern-Owners likewise argues that owner Grady Square is cloaked in workers' compensation immunity under Florida case law, as Grady Square was involved in the operation, construction, overseeing, and coordinating of the premises under construction, as alleged in the underlying complaint.  Dkt. 75 at 20 (citing, *e.g.*, *Ramos v. Univision Holdings, Inc.*, 655 So. 2d 89 (Fla. 1995)).

In response to Southern-Owners' Exclusion d argument, Owners Grady Square and Richman contend that, if one considers extrinsic evidence, the overwhelming majority of it establishes Sanchez did not work for them.  Dkt. 81 at 18.  They argue that, under Florida law, an owner/builder is not a "contractor" for purposes of workers' compensation law and that there is no obligation for them to provide workers' compensation benefits for an injured non-employee working on their property.  Dkt. 81 at 18 (citing *Sheedy v. Vista Props., Inc.*, 410 So. 2d 561 (Fla. 4th DCA 1982); *Jones v. Fla. Power Corp.*, 72 So. 2d 285 (Fla. 1954)).  Grady Square and Richman suggest that an easier way to consider this is to examine the underlying complaint, which clearly does not assert allegations against them solely and entirely within the boundaries of Mr. Sanchez being their actual or statutorily imputed employee.  Dkt. 81 at 18.  This is true.

Also concerning this workers' compensation exclusion, First Florida, LLC,

and First Florida Building Corporation strongly argue that extrinsic evidence should not be considered in a duty to defend case. Dkt. 85 at 8. They assert that there must be an "exceptional case" to do so. Dkt. 85 at 8 (citing *Keen*, 658 So. 2d at 1103). They stress that, under *Keen*, extrinsic evidence may only be considered when the evidence placing the claim outside of coverage is uncontroverted, or when the claimant makes no attempt to plead facts creating coverage nor suggests the existence of evidence establishing coverage. Dkt. 85 at 9. The First Florida entities contend that, even if the Court were to consider extrinsic evidence and find that Mr. Sanchez was their employee, he may have been a mere temporary worker. Dkt. 85 at 14. They note that, per the terms of the Southern-Owners policy, the workers' compensation exclusion does not apply if Mr. Sanchez is a temporary worker, thereby requiring Southern-Owners to defend the First Florida entities. Dkt. 85 at 14.

Mr. Sanchez was obviously an employee of one or more parties. The policy's workers' compensation exclusion is ultimately quite likely to apply to one or more Defendants—most likely First Florida, LLC, and possibly First Florida Building. At this stage, however, even if the Court goes beyond the "eight corners," Southern-Owners has not established as an uncontested issue of material fact precisely for whom Mr. Sanchez worked. It is not undisputed or certain that Mr. Sanchez was an employee of First Florida, LLC, or First Florida

Building, or whether he was a temporary worker of either.  Mr. Sanchez's

underlying complaint does not resolve these matters, perhaps intentionally so.

Mr. Sanchez alleges that he was both "working with [First Florida Building]" and

"was an invitee."  Dkt. 1-2 ¶¶ 3, 12, 78.  It is also not presently clear that the

claims of the underlying complaint against each non-movant are cast solely and

exclusively within Exclusion d.  If one construes inferences and contested issues

in favor of coverage, Southern-Owners' entitlement to summary judgment is not

established, at least for the time being.

Next, Southern-Owners argues that the employers' liability exclusion,

labeled as "Exclusion e" in the policy, applies.  Dkt. 75 at 21.  This exclusion

precludes coverage for bodily injury to an "employee of any insured arising out of

or in the course of employment by any insured."  Dkt. 1-1 at 28.  Exclusion e

applies "whether any insured may be liable as an employer or in any other

capacity" under the workers' compensation scheme.  Dkt. 1-1 at 28.  This is

distinct from, yet a slightly more expanded concept of, the policy's workers'

compensation exclusion.  Southern-Owners argues that Mr. Sanchez was an

employee of any insured, and as a result, the underlying complaint is cast solely

and entirely within Exclusion e.  Dkt. 75 at 21.  The Court does not believe that

Southern Owners, at this time, has established that it is entitled to summary

judgment on coverage based upon this exclusion.  Moreover, by its text, the

exclusion "does not apply to liability assumed by any insured under an 'insured contract.'" Dkt. 1-1 at 28.

In its final point, Southern-Owners states that the subcontract signed by its insured, Florida Construction, requires Florida Construction to indemnify and defend the prime contractor First Florida, LLC, and the "Owner." Dkt. 75 at 22. Thus, Southern-Owners asserts that the subcontract and its indemnification provisions, which run to the prime contractor and owner, may constitute an "insured contract." Dkt. 75 at 22. Under the Southern-Owners policy, this "insured [sub]contract" is excepted from the standard exclusion for such third-party contracts.[6] As Southern-Owners concedes, under this concept of an insured contract, the prime contractor First Florida, LLC, and the "Owner" might each be considered additional insureds beyond and independent of the blanket additional insured endorsement. Dkt. 75 at 22 (citing *Ring Power Corp. v. Amerisure Ins. Co.*, 326 F. App'x 502 (11th Cir. 2009) (finding an entity to be covered under an insurance policy as an additional insured and, independently, through an insured contract)). Despite this, Southern-Owners argues that the insured contract

---

[6] This is an exception to "Exclusion b" in the Southern-Owners' policy. Exclusion b bars coverage for contracts where the insured assumes liability of another, but "insured contracts" are excepted from this bar. Dkt. 1-1 at 28. The policy defines an "insured contract," in pertinent part, as "that part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' . . . to a third person or organization," with "tort liability" meaning "a liability that would be imposed by law in absence of any contract or agreement." Dkt. 1-1 at 41.

concept provides no coverage to any Defendant for two reasons.

First, Southern-Owners argues that the subcontract of its insured, Florida Construction, may not be construed to cover or indemnify a party's own gross negligence or willful or wanton conduct.  Dkt. 75 at 23.  Southern-Owners argues that the underlying complaint asserts gross negligence or intentional conduct and is, thus, not covered.  Dkt. 75 at 23.  The Court notes, again, that the underlying complaint asserts many things—much of which is not grossly negligent or intentional conduct.  The underlying complaint is not cast solely within the coverage bar on gross negligence or intentional acts.

Second, Southern-Owners presents a bit of a catch-all argument in that Exclusion b prevents coverage for an insured contract if there is no coverage for the insured, Florida Construction.  Dkt. 75 at 23−24.  Under this theory, Southern-Owners contends that, based on its aforementioned arguments, "the Policy does not apply because the Insuring Agreement is not met and one or more exclusions apply."  Dkt. 75 at 24.  This may be a true reading of the policy, but the Court has determined that facts remain well in contest concerning the coverage issues Southern-Owners brings.  Southern-Owners' motion for summary judgment is denied on this ground, as well.

### FIRST MERCURY'S MOTION FOR SUMMARY JUDGMENT

As set forth above, the First Mercury insurance policy was issued to prime

contractor, First Florida, LLC, and First Florida Building.  Dkt. 55-5 at 24.

Additional insureds under the First Mercury policy include owners Grady Square

and Richman.  Dkt. 55-5 at 32.  First Mercury tendered a request to Southern-

Owners to indemnify and defend these four entities in the underlying lawsuit.

Dkt. 55-6.  Southern-Owners declined the tender, and First Mercury has been

providing a defense to its named insureds First Florida, LLC, and First Florida

Building, as well as additional insureds Grady Square and Richman.  Dkt. 55-7;

Dkt. 56 at 12.

In its motion for summary judgment, First Mercury seeks a declaration that

Grady Square and Richman are additional insureds under the Southern-Owners'

policy.  Dkt. 56 at 2.  Further, First Mercury seeks a declaration that, based on the

BAI endorsement of the Southern-Owners policy, Southern-Owners' duty to

defend Grady Square and Richman is prime, and First Mercury's duty is

secondary or excess.  Dkt. 56 at 2−3.  Finally, First Mercury seeks reimbursement

from Southern-Owners by way of equitable subrogation for the underlying

defense costs it has paid to date for Grady Square and Richman.  Dkt. 56 at 3.

The Court's analysis of this motion is not complex.  Regarding the two

declarations First Mercury seeks pertaining to Grady Square and Richman, the

Court begins by reiterating its above finding that Grady Square and Richman are

owners of the apartment project.  Although there is extrinsic evidence that

Richman is a "developer" rather than an "owner," the determination is made on the contract documents, as discussed above. The contract documents, which are incorporated into the subcontract of Southern-Owners' listed insured, Florida Construction, say that Richman is an owner. Dkt. 1-5 at 2 ¶¶ 1, 1.3; Dkt. 75-5 at 41.

Under the Southern-Owners policy, an "insured contract" includes "[t]hat part of any other contract or agreement pertaining to your business . . . under which you may assume the tort liability of another party to pay for 'bodily injury' . . . to a third person or organization." Dkt. 1-1 at 41 ¶ 10f. Florida Construction entered into an "insured contract" to assume the tort liability of the owners of the apartment project. The owners are also additional insureds under the BAI endorsement in the Southern-Owners policy, which states that the policy is "primary for the Additional Insured, but only with respect to liability arising out of 'your work' for that Additional Insured by or for you." Dkt. 1-1 at 19. The only question is whether owners Grady Square and Richman are sued in the underlying case with respect to liability for the work done by Florida Construction, i.e., "your work."

Owners Grady Square and Richman are clearly being sued by Mr. Sanchez for liability arising out of Florida Construction's work. Mr. Sanchez fell through a hole in the roof of the owners' apartment project, where Florida Construction

was contractually responsible for roof construction and fall safety/prevention. Mr. Sanchez also sues the owners for myriad claims related to the roof and roof safety failures. *E.g.*, Dkt. 1-2 ¶ 87. Mr. Sanchez alleges that the work performed by the owners, through their agents, contractors, and subcontractors, created the hole in the roof and subsequently concealed it. Dkt. 1-2 ¶¶ 88−89.

In addition to the direct liability claims Mr. Sanchez brings against the owners, the underlying complaint also asserts vicarious liability against Grady Square for Florida Construction's actions. Dkt. 1-2 *passim*. In the underlying complaint, Mr. Sanchez avers that Grady Square "knew or should have known that Florida Construction committed tort acts in developing, constructing, managing, supervising, and maintaining the Premises." Dkt. 1-2 ¶ 182. Mr. Sanchez also specifically sues both owners for the negligent hiring, retention, and supervision of Florida Construction. Dkt. 1-2 ¶¶ 175−84, 253−62.

It appears clear that, for purposes of this analysis, Grady Square and Richman fit within the "insured contract" provision and the blanket additional insured endorsement. However, Southern-Owners argues that First Mercury's motion for summary judgment should be denied on the grounds stated above in Southern-Owners' own motion. Its main argument is that the underlying complaint does not depict an "accident" or "occurrence," but indicates intentional conduct or actions known to be "virtually certain" to cause injury. Dkt. 77 at

11–12.  The Court has rejected this description of the underlying complaint in the pages above.

Next, while conceding that owner Grady Square is an additional insured under the policy, Southern-Owners relies on extrinsic evidence to argue that Richman is the developer, not an owner, of the apartment project.  Dkt. 77 at 3–4. The Court must go by the plain, written language of the insurance policy.  The plain language of the BAI endorsement in Southern-Owners' policy says that the written contract controls this matter.  The General Conditions of the main AIA contract, which were incorporated by reference into the subcontract of Southern-Owners' insured, list Richman as an owner.  Dkt. 1-5 at 2 ¶¶ 1, 1.3; Dkt. 75-5 at 41.

Southern-Owners then repeats its motion's other arguments relating to the policy's coverage exclusions for expected or intended injuries, workers' compensation, and employer liability.  Dkt. 77 at 13–15.  The Court finds them unavailing at this juncture for reasons stated above.

Southern-Owners further argues that, even if it had a duty to defend Grady Square and Richman, that duty is not primary.  Dkt. 77 at 15.  Both parties cite case law on this point, but the Court must apply the plain language of the Southern-Owners policy and Florida Construction's subcontract.  The Southern-Owners policy states in the BAI endorsement that the policy is "primary for the

27

Additional Insured, but only with respect to liability arising out of 'your work' for that Additional Insured by or for you.  Other insurance available to the Additional Insured will apply as excess insurance and not contribute as primary insurance to the insurance provided by this endorsement." Dkt. 1-1 at 19.  This appears plain to the Court.  Owners Grady Square and Richman are "Additional Insureds," so the Southern-Owners policy is primary.

Moreover, Southern-Owners agreed to be primary in writing.  The "insured [sub]contract" of Florida Construction states that Florida Construction must obtain a policy that "shall be primary and non-contributory with respect to policies carried by an additional insured." Dkt. 1-5 at 3 ¶ 6.3; Dkt. 55-4.  The policy obtained under this subcontract was the Southern-Owners policy, which expressly states that it is primary.  These express and plain terms control.  Even in their absence, the indemnity agreement running to the owners from Florida Construction would make the latter's Southern-Owners policy primary as between Southern-Owners and First Mercury.  *See generally MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 654 F. App'x 466, 468 (11th Cir. 2016) (finding indemnity agreement shifted primary liability from insurer to indemnitor) (citing *Cont'l Cas. Co. v. City of S. Daytona,* 807 So. 2d 91, 93 (Fla. 5th DCA 2002)); *accord Progressive Express Ins. Co. v. Fla. Dep't Fin. Servs.*, 125 So. 3d 201, 203 (Fla. 4th DCA 2013).  Accordingly, the Court finds that Southern-Owners

owes a primary duty of defense to Grady Square and Richman based on the Southern-Owners policy and its insured's subcontract.

Finally, the Court turns to First Mercury's request for equitable subrogation. Equitable subrogation is appropriate where it would not work any injustice to the rights of a third party, and the subrogee (1) made payment to protect its own interests, (2) did not act as a volunteer, (3) was not primarily responsible for the debt, and (4) paid off the entire debt. *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 646 (Fla. 1999). Here, these elements are met. Owners Grady Square and Richman are being sued below due to, *inter alia*, the alleged faulty work of Southern-Owners' insured, the roofing subcontractor Florida Construction. Southern-Owners agreed to be primary for the additional insureds. The First Mercury policy is not co-primary. First Mercury made payment for the defense of these entities to protect its own interest, i.e., to avoid a breach of contract or bad faith claim. First Mercury did not act as a volunteer by providing Grady Square and Richman with a defense when Southern-Owners declined its tender. To order subrogation here would not work any injustice, as the primary duty to defend lies with Southern-Owners under its own contract.

The Court finds that the doctrine of equitable subrogation applies. First Mercury shall recover from Southern-Owners its defense costs/fees to date for defending Grady Square and Richman in the underlying lawsuit.

## CONCLUSION

For the foregoing reasons, Plaintiff/Counter-Defendant Southern-Owners' motion for summary judgment (Dkts. 74 & 75) is **DENIED**, and intervening Defendant/Counterclaimant First Mercury's motion for partial summary judgment (Dkts. 55 & 56) is **GRANTED**. The Court previously stayed the deadlines in this case. Dkt. 99. The stay is lifted, and the parties are directed to submit an amended case management report within ten (10) days.

**DONE AND ORDERED** at Tampa, Florida, on October 29, 2021.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record